**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | |
|---|---|
| LESTER NICHOLSON,<br> PLAINTIFF,<br><br>VS.<br>OCONEE COUNTY SHERIFF'S OFFICE, CITY OF SENECA, JUSTIN MANESS IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, CHASE MARTIN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, FELICITY CARTER IN HER OFFICIAL AND INDIVIDUAL CAPACITY, CHRISTOPHER RHOLETTER IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, JOSEPH LAMARSH IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, JUSTIN WELBORN IN HIS OFFICIAL AND INDIVIDUAL CAPACITY.<br> DEFENDANTS. | **COMPLAINT**<br><br>(JURY TRIAL DEMANDED)<br><br><br>**Case No.** <u>1:24-cv-00232-JFA-SVH</u> |

**PARTIES**

1.      Lester Nicholson ("Plaintiff') is currently a resident of South Carolina and was residing in Oconee County, South Carolina on March 25, 2022. Plaintiff has resided in Seneca, South Carolina for over twenty (20) years.

2.      Upon information and belief, the City of Seneca Police Department ("Seneca Police") is a political subdivision of the City of Seneca ("Defendant City of Seneca") and, as such, is a political subdivision of the State of South Carolina as defined by § 15-78-10, et seq., of the South Carolina Code of Laws.

3.       Upon information and belief, Defendant Oconee County Sheriff's Office ("OCSO") is a political subdivision of Oconee County, and, as such, is a political subdivision of the State

of South Carolina as defined by § 15-78-10, et seq., of the South Carolina Code of Laws.

4.      Upon information and belief, the Oconee County Detention Center ("Detention Center") is a political subdivision of the OCSO and, as such, is a political subdivision of the State of South Carolina as defined by § 15-78-10, et seq., of the South Carolina Code of Laws.

5.      Upon information and belief, Defendant Officer Justin Welborn ("Defendant Welborn") is a citizen and resident of South Carolina, who at the time of the incident and actions against the Plaintiff was employed by the Seneca Police as a police officer.  The extent to which Defendant Welborn was acting under his authority from the Seneca Police is speculative given the alleged standards of conduct for an officer in his capacity with the conduct alleged herein.

6.      To the extent that Defendant Welborn's conduct conformed to the standards and practices of the Seneca Police or was condoned by the Seneca Police, then all conduct alleged herein in conformance with the standards and practices of the Seneca Police or was condoned by the Seneca Police was performed under the color of law in his capacity as a law enforcement officer of the Seneca Police.

7.      In the alternative, to the extent that Defendant Welborn's conduct failed to conform to the standards and practices of the Seneca Police, Defendant Welborn's alleged conduct herein was perpetrated while on duty as a law enforcement officer under the color of law of the Seneca Police with equipment provided by Seneca Police and the Defendant City.

8.      In the alternative, to the extent that Defendant Welborn's conduct was in direct opposition to the training, standards and practices of Seneca Police, Defendant Welborn's alleged conduct herein was perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and his well-being, and Defendant Welborn should be charged criminally.

9.      Upon information and belief, Defendant Officer Chase Martin ("Defendant Martin") is a citizen and resident of South Carolina. The extent to which Defendant Martin was acting under his authority from OCSO is assumed pending response from Defendant regarding Defendant Martin's actions in contrast to the standards for conduct for an officer in his capacity with the conduct alleged herein.

10.     To the extent that Defendant Martin's conduct conformed to the standards and practices of the OCSO, all conduct alleged herein in conformance with the standards and practices of OCSO was performed under the color of law in his capacity as a law enforcement officer of OCSO.

11.     In the alternative, to the extent that Defendant Martin's conduct is deemed to have failed to conform to the standards and practices of OCSO, Defendant Martin's alleged conduct herein was perpetrated while on duty as a law enforcement officer of the OCSO under the color of law.

12.     In the alternative, to the extent that Defendant Martin's conduct was in direct opposition to the training, standards and practices of the OCSO and Defendant OCSO denounces Defendant Martin's conduct, Defendant Martin's alleged conduct herein is then alleged to have been perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and well-being and Defendant Martin should be charged criminally.

13.     Upon information and belief, Defendant Officer Felicity Carter ("Defendant Carter") is a citizen and resident of South Carolina. The extent to which Defendant Carter was acting under his authority from OCSO is assumed pending response from Defendant regarding Defendant Carter's actions in contrast to the standards for conduct for an officer in his capacity with the

conduct alleged herein.

14.     To the extent that Defendant Carter's conduct conformed to the standards and practices of the OCSO, all conduct alleged herein in conformance with the standards and practices of OCSO was performed under the color of law in his capacity as a law enforcement officer of OCSO.

15.     In the alternative, to the extent that Defendant Carter's conduct is deemed to have failed to conform to the standards and practices of OCSO, Defendant Carter's alleged conduct herein was perpetrated while on duty as a law enforcement officer of the OCSO under the color of law.

16.     In the alternative, to the extent that Defendant Carter's conduct was in direct opposition to the training, standards and practices of the OCSO and Defendant OCSO denounces Defendant Carter's conduct, Defendant Carter's alleged conduct herein is then alleged to have been perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and well-being and Defendant Carter should be charged criminally.

17.     Upon information and belief, Defendant Sergeant Justin Maness ("Defendant Maness") is a citizen and resident of South Carolina.   The extent to which Defendant Maness was acting under his authority from OCSO is assumed pending response from Defendant OCSO regarding Defendant Maness's actions in contrast to the standards for conduct for an officer in his capacity with the conduct alleged herein.

18.     To the extent that Defendant Maness's conduct conformed to the standards and practices of the OCSO, all conduct alleged herein in conformance with the standards and practices of OCSO was performed under the color of law in his capacity as a law enforcement

officer of OCSO.

19.      In the alternative, to the extent that Defendant Maness's conduct is deemed to have failed to conform to the standards and practices of OCSO, Defendant Maness's alleged conduct herein was perpetrated while on duty as a law enforcement officer of the OCSO under the color of law.

20.      In the alternative, to the extent that Defendant Maness's conduct was in direct opposition to the training, standards and practices of the OCSO and Defendant OCSO denounces Defendant Maness's conduct, Defendant Maness's alleged conduct herein is then alleged to have been perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and well-being and Defendant Maness should be charged criminally.

21.      Upon information and belief, Defendant Officer Christopher Rholetter ("Defendant Rholetter") is a citizen and resident of South Carolina. The extent to which Defendant Rholetter was acting under his authority from OCSO is assumed pending response from Defendant regarding Defendant Rholetter's actions in contrast to the standards for conduct for an officer in his capacity with the conduct alleged herein.

22.      To the extent that Defendant Rholetter's conduct conformed to the standards and practices of the OCSO, all conduct alleged herein in conformance with the standards and practices of OCSO was performed under the color of law in his capacity as a law enforcement officer of OCSO.

23.      In the alternative, to the extent that Defendant Rholetter's conduct is deemed to have failed to conform to the standards and practices of OCSO, Defendant Rholetter's alleged conduct herein was perpetrated while on duty as a law enforcement officer of the OCSO under

the color of law.

24.     In the alternative, to the extent that Defendant Rholetter's conduct was in direct opposition to the training, standards and practices of the OCSO and Defendant OCSO denounces Defendant Rholetter's conduct, Defendant Rholetter's alleged conduct herein is then alleged to have been perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and well-being and Defendant Rholetter should be charged criminally.

25.     Upon information and belief, Defendant Officer Joseph Lamarsh ("Defendant Lamarsh") is a citizen and resident of South Carolina.  The extent to which Defendant Lamarsh was acting under his authority from OCSO is assumed pending response from Defendant regarding Defendant Lamarsh's actions in contrast to the standards for conduct for an officer in his capacity with the conduct alleged herein.

26.     To the extent that Defendant Lamarsh's conduct conformed to the standards and practices of the OCSO, all conduct alleged herein in conformance with the standards and practices of OCSO was performed under the color of law in his capacity as a law enforcement officer of OCSO.

27.     In the alternative, to the extent that Defendant Lamarsh's conduct is deemed to have failed to conform to the standards and practices of OCSO, Defendant Lamarsh's alleged conduct herein was perpetrated while on duty as a law enforcement officer of the O C S O under the color of law.

28.     In the alternative, to the extent that Defendant Lamarsh's conduct was in direct opposition to the training, standards, and practices of the OCSO and Defendant OCSO denounces Defendant Lamarsh's conduct, Defendant Lamarsh's alleged conduct herein is then

alleged to have been perpetrated as an individual, and not as a dutiful law enforcement officer, and in extreme deference to the Plaintiff's constitutional rights and well-being and Defendant Lamarsh should be charged criminally.

## FACTUAL BACKGROUND

29.     On March 24, 2022, Plaintiff was detained by Orangeburg Police for speeding on his way back from a vacation.

30.     Plaintiff is an African American male, retired veteran and at the time of the events alleged herein was 63 years old.

31.     A standing misdemeanor warrant issued by the Defendant Seneca Police was flagged on the Plaintiff's record, and he was held for transport by the Seneca Police.

32.     That afternoon, Plaintiff was driven by Seneca Police from Orangeburg, South Carolina, to the Defendant Detention Center in Walhalla, South Carolina.

33.     Defendant Welborn transported Plaintiff to the Defendant Detention Center, arriving at 11:32 PM on the evening of March 24, 2022.

34.     Defendant Martin and Defendant Carter met Plaintiff and Defendant Welborn as they arrived and escorted them into the Detention Center.

35.     At 11:33 PM, Plaintiff made his first request to Defendant Martin to use the restroom, to which Defendant Martin states that Plaintiff may go after the pat-down is completed.

36.     As Defendant Martin and Defendant Welborn initiated the pat-down search, Plaintiff continually made requests to use the restroom, informing Defendants that Plaintiff had surgery on his prostrate and had to use the restroom.

37.     In response to Plaintiff's requests to use the restroom, Defendant Sergeant Justin Maness moved to the intake desk and began yelling at Plaintiff to quiet down.

38.     Defendant Maness and Defendant Welborn continued to engage with Plaintiff during the pat-down.

39.     Defendant Maness then began yelling at the Plaintiff to "sit down" or he "will put you in the chair," in reference to the Restraint Chair.

40.     Shortly after and without provocation, Defendant Maness charged Plaintiff and, with the aid of Defendant Martin, forcefully pushed Plaintiff onto a nearby bench.

41.     At this time, Defendant Maness continued to verbally accost the Plaintiff to the point that Defendant Carter forcefully restrained her superior Defendant Maness from Plaintiff.

42.     Defendant Maness continued to yell things back at the Plaintiff while Defendant Martin forced Plaintiff into the bench.

43.     Defendant Carter escorted Defendant Maness away from Plaintiff and made motions for him to leave the room.

44.     Defendant Carter then walked Defendant Maness out of the room and into the nearby check-in station.

45.     Defendant Rholetter entered the room and stood over Plaintiff with Defendant Martin while Defendant Welborn retrieved the Restraint Chair.

46.     Defendant Carter physically blocked the entrance to intake to prevent Defendant Maness from re-engaging with Plaintiff.

47.     As Defendant Maness attempted to go back into the room during Plaintiff's search, Defendant Carter prevented him from entering and walked him into the check-in room.

48.     A few moments later, and without provocation, Defendant Martin and Rholetter forced Plaintiff to the ground as Plaintiff attempted to turn around on the bench.

49.     Defendant Maness attempted to re-enter the room, prompting Defendant Carter to

try to physically restrain him by grabbing his arm.

50.     Defendant Maness knocked her arm away, going back into the room to assist Defendant Martin, Rholetter, and Welborn in the restraint of Plaintiff.

51.     During this restraint, Plaintiff told Defendants that he could not breathe, which prompted Defendant Welborn to respond that "if you can speak, you can breathe."

52.     Defendants Maness, Rholetter, Welborn, Martin and Carter forcibly placed Plaintiff into the Restraint Chair, bounding his legs, arms, and neck.



53.     During this restraint of Plaintiff, Defendant Martin struck Plaintiff across the face and choked the Plaintiff.



54.    At 11:42 PM, Plaintiff was fully restrained in the Restraint Chair and moved by Defendant Maness to the holding area and left in the care of Defendant Maness.

55.    Plaintiff was placed facing a brick wall and less than three feet from the door of a restroom where the door was left open so that Plaintiff could see the restroom but not be able to access it.



56.    At 12:20 AM, Plaintiff was talked to by Defendant Martin and Defendant Carter, where

he continued to plea to go to the restroom. His requests were again denied.

57.    At 1:34 A.M., Defendant Martin delivered a blanket to Plaintiff. Plaintiff continued

requesting to use the restroom and be released from the chair and was again denied.

58.     Between 1:58 AM and 2:42 AM, Defendant Carter permits two inmates to use the restroom directly beside Plaintiff, while again denying his requests to go to the restroom.

59.     At 2:48 AM, Defendant Maness confronts Plaintiff, standing between the wall and Plaintiff. Again, Plaintiff's requests to use the restroom are denied.

60.     At 3:04 AM, Defendant Maness again confronts Plaintiff. Currently, Plaintiff notifies Defendant Maness that his chest hurts and relays to Defendant Maness his history of heart problems.

61.     Defendant Maness leaves without checking Plaintiff's vitals.

62.     Eight minutes later, at 3:12 AM, Defendant Martin checks Plaintiff's vital signs. Defendant Maness continues to harass Plaintiff while vitals are taken.

63.     At roughly 3:18 AM, Defendant Martin remarks to Plaintiff that he should have more "respect" for the officers, and motions toward a tattoo on Defendant Martin's arm that includes a flag on his arm.



64.    Despite his mentions of chest pain and need to use the restroom, Plaintiff is given no medical care from the Defendant Detention Center.

65.    At 4:11 AM, Defendant Lamarsh talks to Plaintiff and leaves Plaintiff detained in the Restraint Chair.

66.    At 4:41 AM, five hours into being restrained in the Restraint Chair, Defendant Maness again talks to Plaintiff and leaves him restrained in the Restrain Chair.

67.    At 5:38 AM, Defendant Maness again talks to Plaintiff and declines to remove him from the Restraint Chair.

68.    At 6:18 AM, Defendant Carter talks to Plaintiff and declines to remove him from the Restraint Chair.

69.    At 6:26 AM, Defendant Lamarsh again talks to Plaintiff and gives him a blanket. The officer leaves Plaintiff in the Restraint Chair.

70.    At 7:12 AM, Plaintiff requested medical attention. Plaintiff would not receive it.

71.    During this time, another three inmates use the restroom three feet from Plaintiff.

72.    Nearly two hours later, at 8:54 AM, another officer checks on Plaintiff. Now at over nine hours in the Restraint Chair, Plaintiff is again left in the chair.

73.    At 10:11 AM, Plaintiff is approached Sergeant Renita Rholetter, Bethany Crocker, Mathew Hewell, and Nurse Stacy.

74.    These officers talk with Plaintiff and begin removing restraints to get him out of the Restraint Chair.

75.    At 10:23 AM, Plaintiff is helped out of the Restraint Chair after ten hours and forty-one minutes.

76.    Plaintiff cannot stand on his own and is helped by the officers and nurse.

77.    During his restraint, Plaintiff has urinated onto his legs and clothes and left to sit his soiled clothing for hours, despite notifying staff numerous times.

78.    Plaintiff is finally helped to the restroom to shower and use the restroom. He is given a change of clothes. Plaintiff is visibly distraught and crying while going into the restroom.

79.    Despite his condition, Plaintiff is given no significant medical care and is held until the afternoon and is released after being given a personal recognizance bond.

80.    Plaintiff suffered lasting damage to his shoulder because of the actions of the Defendants.

81.    Plaintiff suffered burns to his skin due to being forced to sit in his own urine because of the actions of the Defendant.

82.    Defendant OCSO and Detention Center possessed standing policy and procedures regarding the use of the Restraint Chair on inmates.

83.    Defendants Maness, Rholetter, Welborn, Carter, and Martin were aware of these policies and procedures regarding the use of the Restraint Chair and had received training as to such use.

### For the First through Sixth Causes of Action
### 42 U.S.C. § 1983
### (Excessive Force against Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn)

84.    The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

85.    Plaintiff did not present any imminent danger of serious bodily harm or death to either to any of the Defendants named herein.

86.    Plaintiff stated that he had to use the restroom to relieve himself and had cooperated with law enforcement.

87.     Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn physically struck, choked, and tackled the Plaintiff without any justification or threat of harm to any one of the named Defendants.

88.     Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn used excessive force in the restraint of the Plaintiff which is a violation of Plaintiff's state and federally protected rights.

89.     Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced, his personal injury, his medical bills, his lifetime injury, and an award of punitive damages in an amount deemed sufficient by a jury to impress upon Defendants that such conduct will not be tolerated in our society.

**For the Seventh through Twelfth Causes of Action**
**42 U.S.C. § 1983**
**(Deliberate Indifference Against Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn)**

90.     The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

91.     Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn all ignored Plaintiff's plea for assistance throughout his ordeal.

92.     To the extent that Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn were trained to protect an individual they oversaw they deliberately ignored the policy procedure.

93.     Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn knowingly and recklessly disregarded providing Plaintiff with mandatory medical care.

94.     Due to Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn's indifference, Plaintiff was forced to urinate on himself as he left for almost eleven (11) hours outside a bathroom in a restraint chair.

95.       Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn inhumanely treated the Plaintiff and had no remorse for their actions.

96.       Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being injured because of Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn's deliberate indifference to his to his care.

97.       Plaintiff further seeks an award of punitive damages in an amount deemed sufficient by a jury to impress upon Defendants Maness, Martin, Carter, Rholetter and Lamarsh and Welborn that such conduct will not be tolerated in our society.

**For Thirteenth through Eighteenth Causes of Action**
**(Failure To Intervene Against Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn)**

98.       The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

99.       Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn violated Plaintiff's federally protected right to not be abused by excessive force.

100.      Defendants Maness had a duty to prevent the abuse by Defendants Martin, Carter, Rholetter, Lamarsh and Welborn and Defendant Maness failed to intervene and allowed the abuse to occur.

101.      Defendants Martin had a duty to prevent the abuse by Defendants Maness, Carter, Rholetter, Lamarsh and Welborn and Defendant Martin failed to intervene and allowed the abuse to occur.

102.      Defendants Carter had a duty to prevent the abuse by Defendants Maness, Martin, Rholetter, Lamarsh and Welborn and Defendant Carter failed to intervene and allowed the abuse to occur.

103.    Defendants Rholetter had a duty to prevent the abuse by Defendants Maness, Martin, Carter, Lamarsh and Welborn and Defendant Rholetter failed to intervene and allowed the abuse to occur.

104.    Defendants Lamarsh had a duty to prevent the abuse by Defendants Maness, Martin, Carter, Rholetter, and Welborn and Defendant Lamarsh failed to intervene and allowed the abuse to occur.

105.    Defendants Welborn had a duty to prevent the abuse by Defendants Maness, Martin, Carter, Rholetter, and Lamarsh and Defendant Welborn failed to intervene and allowed the abuse to occur.

106.    Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn each had an individual duty to intervene and protect the Plaintiff from the actions of the other detention officers and law enforcement officer and none of them did so.

107.    Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being injured as a result of Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn's  failure to intervene and protect Plaintiff from Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn's excessive force and an award of punitive damages in an amount deemed sufficient by a jury to impress upon Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn that such conduct will not be tolerated in our society.

**For a Nineteenth Cause of Action**
**(Negligent Supervision Against Defendant OCSO)**

108.    The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

109.    Defendant OCSO had a duty to review and supervise the policies and procedures

implementation, execution, and evaluation of the training at the Detention Center.

110.    Under information and belief, Defendant OCSO failed to review and evaluate the training programs and detention policies at the Detention Center.

111.    Defendant City breached its duty to supervise the training at the Detention Center for detention personnel.

112.    As a result of the Defendant OCSO's breach, the Detention Center had inadequately trained officers such as Defendants Maness, Martin, Carter, Rholetter and Lamarsh.

113.    As a direct and proximate cause of Defendant OCSO's breach, inadequately trained detention officers such as Defendants Maness, Martin, Carter, Rholetter and Lamarsh were placed in a position where they could, and did, harm a member of the community.

114.    Plaintiff incurred financial damages, personal injury, and long-term pain and suffering and the deprivation of his state and federally protected civil liberties because Defendant OCSO was negligent in its training and supervision of the Detention Center.

115.    Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being permanently injured because of Defendant OCSO's failure to train and supervise the Detention Center and for punitive damages in an amount deemed sufficient by a jury to impress upon the Defendant OCSO that such conduct will not be tolerated in our society.

**For the Twentieth through Twenty-Fifth Causes of Action**
**(Assault and Battery Against Defendant OCSO)**

116.    The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

117.    Defendants Maness, Martin, Carter, Rholetter and Lamarsh's actions of tackling, hitting, choking, and threatening placed Plaintiff in fear of an unlawful impending battery.

118.    Plaintiff suffered bodily injury by being tackled, hit, and choked which inflicted pain and injury on the Plaintiff.

119.    Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being injured because of Defendants Maness, Martin, Carter, Rholetter and Lamarsh's unlawful assault and battery and for punitive damages in an amount deemed sufficient by a jury to impress upon Defendant OCSO that such conduct will not be tolerated in our society.

**For the Twenty-Sixth Cause of Action**
**(Assault and Battery Against Defendant City of Seneca)**

120.    The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

121.    Defendant Welborn's actions of tackling, hitting, pushing, and threatening placed Plaintiff in fear of an unlawful impending battery.

122.    Plaintiff suffered bodily injury by being tackled, hit, and pushed which inflicted pain and injury on the Plaintiff.

123.    Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being injured because of Defendant Welborn's unlawful assault and battery and for punitive damages in an amount deemed sufficient by a jury to impress upon Defendant City of Seneca that such conduct will not be tolerated in our society.

**For a Twenty-Seventh Cause of Action**
**(Negligent Training Against Defendant OCSO)**

124.    The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

125.    The written OCSO Police Policy and Procedures regarding the use of a restraint chair

was ignored by Defendants Maness, Martin, Carter, Rholetter and Lamarsh.

126.     But for OCSO's failure to train Defendants Maness, Martin, Carter, Rholetter and Lamarsh, Plaintiff would not have been injured and humiliated by their actions on March 22, 2022.

127.     Plaintiff is entitled to and prays for an award of damages for the infliction of suffering and pain he experienced and for being injured as a result of Defendant OCSO's negligence to train Defendants Maness, Martin, Carter, Rholetter and Lamarsh in the operation and use of a restraint chair as law enforcement officers and an award of punitive damages in an amount deemed sufficient by a jury to impress upon Defendant OCSO that such conduct will not be tolerated in our society.

### For a Twenty-Eighth Cause of Action
### (U.S. Const. Amendment XIII – Cruel and Unusual Punishment)

128.     The paragraphs set forth above are incorporated herein as if re-alleged and restated in full verbatim.

129.     The actions of Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn against Plaintiff while in the custody of Defendant OCSO as alleged herein violated Plaintiff's federal protections afforded under the U.S. Constitution, Amendment XIII, which prohibits cruel and unusual punishment.

130.     The actions of Defendants Maness, Martin, Carter, Rholetter, Lamarsh and Welborn, individually or combined, resulted in a punishment that is incompatible with our society's standard for decency and intentionally inflicted unnecessary pain on the Plaintiff.

131.     Plaintiff is entitled to and prays for an award of damages for the cruel and unusual punishment inflicted upon him and an award of punitive damages in an amount deemed sufficient by a jury to impress upon Defendants that such conduct will not be tolerated in our society.

**WHEREFORE**, Plaintiff prays for jury trial and seeks the following:

1.      For judgment against the Defendants as set forth in the causes above, including an award of damages for the violation of his state and federally protected rights;

2.      An award of damages for actual, compensatory and consequential damages;

3.      An award of punitive damages in an amount deemed sufficient by a jury to impress upon the Defendants that their actions will not be tolerated in a civilized society;

4.      For pre-judgment and post-judgment interest for any award that may be awarded in this matter; and

5.       Together with such additional relief as the court deems just and proper.

                                                            LAW OFFICE OF KEITH G. DENNY, LLC

                                                            s/Keith G. Denny

                                                            _____
                                                            Keith G. Denny (S.C. Bar No. 79727
                                                            Federal Bar No. 11596)
                                                            Attorney for Plaintiff
                                                            50 Short Street / P.O. Box 101
                                                            Walhalla, South Carolina 29691
                                                            Phone:  864-916-2581
                                                             Email:  keith@dennylegal.com

Walhalla, South Carolina
June 20, 2023